IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICKIE THORNE, individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION |
| Plaintiff, | : : | NO.19-cv-00393 |
| v. | : : : | |
| PEP BOYS – MANNY, MOE & JACK INC., | : : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                                **JULY 17 , 2019**

Before this Court are Defendant's Motion to Dismiss (Doc. No. 13), Plaintiff's Response in Opposition thereto (Doc. No. 20), and Defendant's Reply in further support thereof (Doc. No. 21). For the reasons set forth in this Memorandum, the Motion to Dismiss is GRANTED without prejudice and Plaintiffs are GRANTED leave to file an amended complaint within 20 days of the entry of this Order correcting the deficiencies noted in this Memorandum.

**I. BACKGROUND**

In 1966, the National Traffic and Motor Vehicle Safety Act ("the Safety Act"), 49 U.S.C. §30101, et seq., was enacted to reduce traffic accidents as well as deaths and injuries resulting from traffic accidents. The instant action concerns a

regulation, promulgated under the Safety Act, aimed at facilitating notification to purchasers of defective or nonconforming tires in the interest of motor vehicle safety. 49 C.F.R. §574.2.

Under this federal regulation, independent distributors and dealers of tires are required to assist tire manufacturers in the recordkeeping of new tire owners. Id. at §574.8. While independent distributors and dealers must comply with specific recordkeeping requirements under this regulation, ultimately, tire manufacturers shoulder the responsibility of maintaining new tire purchasers' contact information. See Tire Identification and Recordkeeping, 36 Fed. Reg. 9780 (May 28, 1971).

This case arises from a putative class action brought by Plaintiff Vicki Thorne ("Thorne") and all other unnamed Plaintiffs similarly situated (collectively "Class Members") against Defendant Pep Boys – Manny, Moe & Jack Inc. ("Pep Boys") alleging willful and noncompliant practices in the automobile retail market regarding tires sold by Pep Boys from October 1, 2012 to the present ("Class Period"). Compl. ¶¶3, 7 & n.2.

Plaintiff is a resident of Rocky Mount, North Carolina. Id. ¶¶1, 38. On January 19, 2017, Plaintiff purchased tires[1]

---

[1] In regards to the January 19, 2017 tire purchase, Plaintiff's Complaint fails to specify the following: 1) the quantity of tires purchased, 2) the tire manufacturer, and 3) tire model number.

from a Pep Boys store located in Richmond, Virginia.  Id. ¶39.
At the time of this purchase, Plaintiff alleges that Defendant
willfully failed to register tires sold to Plaintiff and also
failed to provide federally-mandated forms, in compliance with
tire identification and recordkeeping regulations.[2]  Id. ¶¶3, 7,
10, 40, 43, 61-62, 71, 85, 99, 107-09, 113, 115.  Not only did
Defendant fail to provide Plaintiff with a tire-registration
form at the time of the purchase, but Plaintiff's
invoice/receipt also did not indicate that Pep Boys intended to
electronically-transmit the relevant information for
registration directly to the tire manufacturer.  Id. ¶39.

Defendant Pep Boys is a Delaware corporation, headquartered
at 3111 West Allegheny Avenue, Philadelphia, Pennsylvania.  Id.
¶2.  Under the Safety Act, Defendant is an independent tire
dealer/distributor, not owned or controlled by any tire
manufacturer or brand name owner ("Independent Tire Dealer").
Id. ¶2.

Plaintiff brought this action pursuant to the Class Action
Fairness Act, 28 U.S.C. §1332, on behalf of herself and all

---

[2] Plaintiff relies on the federal regulation which provides that:
> [I]ndependent tire dealers and distributors shall record, on
> registration forms, their names and addresses and the
> identification number of the tires sold to tire purchasers and
> provide the forms to the purchasers, so that the purchasers may
> report their names to the new tire manufacturers and new tire
> brand name owners, and by which other tire dealers and
> distributors shall record and report the names of tire purchasers
> to the new tire manufacturers and new tire brand name owners.

National Traffic and Motor Vehicle Safety Act, 49 CFR §574.1 (Scope)

other similarly situated consumers who purchased tire(s) from the Defendant or their subsidiaries during the class period, for their personal use rather than for resale or distribution, without receiving a registration card ("Nationwide Class"); as well as on behalf of the subclass of all consumers within the State of North Carolina who purchased a tire from the Defendant or their subsidiaries during the class period, for their personal use rather than for resale or distribution, without receiving a registration card ("North Carolina Subclass"). Id. ¶43.

Plaintiff's allegations stem from Defendant's alleged failure to register or provide the appropriate means for registration of tires sold to consumers during the Class Period. Compl. ¶¶3-7. Plaintiff's principal claim is that Defendant's inaction exposed and continues to expose all Class Members, including Thorne, to harm. Plaintiff also claims that Defendant's practice deprived Class Members from the full benefit of their tire purchases, in that Class Members received only partial benefit of what they paid Defendant, id. ¶9, because the payment to Defendant encompassed not only the physical tire but also the cost of Defendant's compliance with federal law. Id. ¶9.

In her Complaint, Plaintiff requests that this Court issue an order certifying this matter for class action status and

ultimately providing Plaintiff with the means to recover for Defendant's failure to register or otherwise comply with federal requirements for tire registration in the form of monetary damages and restitution as well as injunctive and declaratory relief.  Id. ¶3, p 25.

Although Defendant's Brief in Support of its Motion to Dismiss Plaintiff's Complaint contains only the legal standard under Fed. R. Civ. P. 12(b)(6), its Motion contains explicit language requesting dismissal under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Id.  The thrust of Defendant's motion is that Plaintiff lacks Article III standing under recent Supreme Court and Third Circuit decisions.[3]  Id.  This Motion is fully briefed and ripe for the Court's adjudication.

**II.  LEGAL STANDARD**

When a court has jurisdiction, it possesses the "power to declare the law, and when [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Vermont Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 778 (2000) (quoting Ex parte McCardle, 74 U.S. 506, 514 (1868) ("[I]f there is no jurisdiction there is no authority to sit in judgment of anything else."")).  Finally, "when a federal court concludes

---

[3] See Spokeo, Inc. v. Robins, 136 S.Ct. 1540 passim (2014) and Kamal v. J.Crew Group, Inc., 918 F.3d 102 passim (2019).

5

that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

A party may move to dismiss a complaint for lack of subject-matter jurisdiction, under Fed. R. Civ. P. 12(b)(1). As here, "[a] motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Constitution Party v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). E.g., Harty v. Grand-Sasso, Inc., No. 18-CV-5474, 2019 WL 2423095, at *3 (E.D. Pa. June 7, 2019).

When evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack as "that distinction determines how the pleadings must be reviewed." Constitution Party, 757 F.3d at 358 (citing In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) & Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). Cf. In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 632 (3d Cir. 2017) (internal quotations omitted) ("Two types of challenges can be made under Rule 12(b)(1)—either a facial or a factual attack.").

Under Third Circuit precedent, a facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject-matter jurisdiction of the

court." Constitution Party, 757 F.3d at 358 ("[F]or example . . . because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present"). In contrast, a factual attack "is an argument that there is no subject-matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." Id. (holding that when evaluating a factual attack, "the District Court may look beyond the pleadings to ascertain the facts").

In reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elec. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Defendant's Rule 12(b)(1) motion is properly understood as a facial attack because it contends that the Complaint lacks sufficient factual allegations to establish Article III constitutional standing. Def. Br. at 4-9.

With regard to class actions, Third Circuit precedent holds that passive members of a class need not meet standing requirements, "so long as at least one named plaintiff has standing." Neal v. Volvo Cars of N. Am., LLC, 794 F.3d 353 (3d Cir. 2015); see also 12B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure R. 23, at 485 (April 2018). It

7

then follows that "federal courts lack jurisdiction if no named plaintiff has standing." Gaos, 139 S. Ct. at 1046 (2019) (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40, n. 20 (1976)).

A party may also move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). See Renfro v. Unisys Corp., 671 F.3d 314, 320 (3rd Cir. 2011) (quoting Skinner v. Switzer, 562 U.S. 521, 530 (2011)) ("The question is not whether [plaintiffs] will ultimately prevail . . . but whether [their] complaint was sufficient to cross the federal court's threshold") (internal citations and quotations omitted)). What differentiates a 12(b)(6) from the other dismissal motions is that "12(b)(6) alone necessitates a ruling on the merits of the claim, the others deal with procedural defects." Mortensen, 549 F.2d at 891.

Under Fed. R. Civ. P. 12(b)(6), district courts "must accept the facts alleged in the Complaint as true and view them in the light most favorable to the plaintiff." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 161, n. 1 (3rd Cir. 2010) (citing Umland v. PLANCO Fin. Servs., 542 F.3d 59, 64 (3d Cir. 2008)). E.g., Liberty Towers Philly, LP v. Am. Tower Corp., No. 18-CV-4357, 2019 WL 1227199, at *2-3 (E.D. Pa. Mar. 15, 2019).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted).

Although a 12(b)(6) motion affords a plaintiff the benefit of all reasonable inferences from the facts alleged in the complaint, it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678. See also Papasan v. Allain, 478 U.S. 265, 283 (1986) (holding that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted) ("[C]onclusory or bare-bones allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

"While the complaint does not need detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (citing Twombly, 550 U.S. at 555

9

(2007)). See Shulman v. Zsak, 485 F. App'x 528, 530 (3d Cir. 2012). Complaints must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief and finally a demand for the relief sought, which may include relief in the alternative or different types of relief. Fed. R. Civ. P. 8(a)(1-3). A party asserting a claim must allege in the pleadings the "facts essential to show jurisdiction." McNutt v. General Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936). Under this premise and at this preliminary pleading stage, plaintiff "need only allege 'enough facts to state a claim to relief that is plausible on its face.'" Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1322 n.12 (2011) (quoting Twombly, 550 U.S. at 570).

On February 18, 2005, Congress enacted the Class Action Fairness Act of 2005 ("CAFA") regarding interstate class actions, "to assure fairer outcomes for class members and defendants . . . ." 28 U.S.C. 1332. CAFA grants federal district courts with original jurisdiction over any civil action in which the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which satisfies any of the three provided diversity qualifications. See Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2). Despite the generous jurisdictional

extensions CAFA affords class actions it does carve out certain exceptions which either strictly prohibit or allow federal courts to decline jurisdiction for certain class actions. Federal District Courts may decline jurisdiction if more than one-third but less than two-thirds of the class members and the primary defendant are citizens of the forum State. 28 U.S.C. §1332(d)(3).

With regard to class action suits, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Lewis v. Casey, 518 U.S. 343, 357 (1996). See Klein v. Gen. Nutrition Companies, Inc., 186 F.3d 338, 345 (3d Cir. 1999).

Here, Plaintiff's Complaint avers that this Court has subject-matter jurisdiction because (1) the amount in controversy exceeds the sum of $5,000,000; (2) this class action involves more than 100 class members; and (3) some members of the proposed Classes are citizens of a State different from the Defendant. Compl. ¶14.

**III. DISCUSSION**

Plaintiff's Complaint contains various claims against Defendant at both the state and federal level. In response, Defendant requests this Court to dismiss the Complaint, in its

entirety, for the following reasons: (1) Plaintiff lacks Article III Standing, (2) the federal regulation promulgated under the Safety Act creates no state-law tort or contractual remedy, and (3) Plaintiff's Complaint fails to allege facts sufficient to state a claim. In the alternative, Defendant asserts that each cause of action fails to state a claim upon which relief can be granted. Due to Plaintiff's lack of Article III standing, this Court will only address and make its decision based on that singular issue.

In this case, Defendant raises a facial attack to Plaintiff's Complaint which requires viewing its contents in the light most favorable to the plaintiff. Here, this Court is concerned solely with Plaintiff Thorne's Article III standing since she is the only named plaintiff in this putative class action. Although the standards for Article III standing are indeed not Mount Everest, Plaintiff fails to plead even a hill to meet this constitutional requirement. Pl. Br. at 4.

Defendant argues that Plaintiff lacks Article III standing because the Complaint fails to allege an injury-in-fact, in that Plaintiff's allegation of expecting to be reachable by tire manufacturers does not give her standing to sue. Def. Br. at 8.

Plaintiff contends that she has alleged an invasion of a legally protected interest, which is concrete and particular as well as actual and imminent. Pl. Br. at 4-10. Therefore, we

must consider whether Plaintiff has Article III standing as a threshold issue.

The Constitution grants federal courts authority to decide legal questions only in the course of resolving "Cases" or "Controversies." Trump v. Hawaii, 138 S. Ct. 2392, 2416 (2018) (citing Art. III, §2). The doctrine of standing is "a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." Lewis v. Casey, 518 U.S. 343, 349 (1996) (quoting Allen v. Wright, 468 U.S. 737, 750–752, (1984)).

Article III standing manifests the judiciary's longstanding deference to the sovereignty of those most likely to be directly affected by a judicial order," by preventing the judicial process from becoming "no more than a vehicle for the vindication of the value interests of concerned bystanders." Valley Forge Christian Coll., 454 U.S. at 473 (quoting United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 687 (1973)).

To have jurisdiction over a claim, federal courts must consider a plaintiff's standing as a threshold issue. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). See Frank v. Gaos, 139 S. Ct. 1041, 1046 (2019); see also Raines v. Byrd, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of

government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.").

The "manner and degree of evidence required at the successive stages of the litigation" vary with regards to standing. Casey, 518 U.S. at 357-58. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136-2137, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted)). In Lewis v. Casey, the Supreme Court noted that "the standing determination is quite separate from certification of the class." Id. at n. 6. See generally Blum v. Yaretsky, 457 U.S. 991, 999 (1982).

In order for a claim to meet the "irreducible constitutional minimum" for Article III standing, a plaintiff must have suffered an injury-in-fact that is fairly traceable to the challenged conduct of the defendant and that is likely to be redressed by a favorable judicial decision. Spokeo, 136 S. Ct. at 1547 (quoting and citing Lujan, 504 U.S. 555, 560-561 (1992) & Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 180-81 (2000)). The party invoking federal jurisdiction, which in this instance is the Plaintiff, bears the

burden of establishing these elements and must clearly allege facts demonstrating each element. See Warth v. Sseldin, 422 U.S. 490, 518 (1975); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990).

The Third Circuit has explained that the key requirements for proving Article III standing, include:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is [(a)] concrete and particularized and [(b)] actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Perelman v. Perelman, 793 F.3d 368, 373 (3d Cir. 2015)[4]

"These requirements ensure that plaintiffs have a 'personal stake' or 'interest' in the outcome of the proceedings, 'sufficient to warrant . . . [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on . . . [their] behalf.'" Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 176 (3d Cir. 2001).

In a recent decision regarding Article III standing, the Supreme Court stressed the importance of a complete analysis of

---

[4] (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). E.g., Long v. Se. Pa. Transp. Auth., 903 F.3d 312, 317 (3d Cir. 2018); Liberty Towers Philly, LP v. Am. Tower Corp., No. 18-CV-4357, 2019 WL 1227199, at *2 (E.D. Pa. Mar. 15, 2019). See also Davis v. Fed. Election Comm'n, 554 U.S. 724,732-33 (2008).

whether the injury is both concrete and particularized.  Spokeo, 136 S. Ct. at 1545.  In Spokeo, plaintiff brought a federal class-action suit against a consumer reporting agency, for willful failure to comply with federal regulation.  Id. at 1546.  The issue presented there was whether the defendant's alleged procedural violations entailed a degree of risk sufficient to meet the concreteness requirement.  Id. at 1550.  Ultimately, the Court remanded the case, holding that the Ninth Circuit failed to perform a complete Article III standing analysis when it solely evaluated for "particularization, [and] not concreteness."  Id. at 1548.

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  Id. at 1548 (citing Lujan, 504 U.S. at 560).  Additionally, an injury must also be concrete, meaning it must "actually exist."  Spokeo, 136 S.Ct. at 1549 (citing de facto definition, Black's Law Dictionary 479 (9th ed. 2009)).  While the Court's use of concrete is synonymous with "real," there is no implication that a concrete injury must be tangible.  Spokeo, 136 S.Ct. at 1548-49.  However, a statutory grant of a right and the ability to sue to vindicate that right does not automatically satisfy the injury-in-fact requirement of Article III.  Id. (finding Article III standing requires concrete injury even in context of statutory violation).  The Spokeo Court illustrates the

16

dichotomy between the injury-in-fact requirement of standing and statutory violation:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

Id. at 1549.

Therefore, it is left to the discretion of the judiciary, relying on "both history and the judgement of Congress" to determine if an intangible harm constitutes an injury in fact. Spokeo, 136 S.Ct. at 1549. See Summers v. Earth Island Institute, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing").

Even in the context of a statutory violation, a concrete injury may be either tangible or intangible. Spokeo, 136 S.Ct. at 1549. Risk of real harm can also satisfy the requirement of concreteness and in some instances, "risk of real harm" may satisfy the requirement of concreteness. Id.

17

Here, Plaintiff alleges that Defendant deprived her the full benefit of her tire purchase and as a result she suffered tangible economic harm and exposure to harm. We disagree. Drawing all allegations and reasonable inferences in the Complaint in the light most favorable to the nonmovant, Plaintiff fails to satisfy Article III standing. Although Plaintiff personally purchased tires from Pep Boys for her individual use, Plaintiff's alleged injury is not concrete.

Plaintiff cites the term "identifiable trifle" as the standard against which all claimed injuries are to be measured. Pl. Br. at 4. However, this alternative terminology requires that "[a] plaintiff must allege that he has been or will in-fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected." United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 688–89 (1973).

Plaintiff argues that Article III standing has been met based on the "very generous" injury-in-fact requirement this Court afforded to claimants in a prior complex antitrust case. See In re Remicade Antitrust Litigation, 345 F.Supp.3d 566, 584 (E.D.Pa. 2018). Plaintiff's argument, however, is misplaced, because antitrust claims evoke both Constitutional Article III standing as well as Antitrust standing, which are two distinct standing requirements, not relevant here. Id. at 576.

While Plaintiff's financial or economic interests are indeed "legally protected interests" for purposes of the standing doctrine, that economic interest must be related to the injury-in-fact. Cottrell v. Alcon Labs., 874 F.3d 154, 164-65 (3d Cir. 2017), cert. denied sub nom. Section 574.8 of the Safety Act specifies that independent tire distributors and dealers must comply with the regulation at no charge to the tire purchaser. See 49 C.F.R. 574.8 (a)(1).

In the context of the case currently before this Court, these general principles lead us to conclude that Congress sought to facilitate notification to purchasers of defective or nonconforming tires so that appropriate action may occur by requiring manufacturers to comply with a recordkeeping statute. See 49 C.F.R. §574.2. It therefore follows that Plaintiff cannot satisfy the requirments of Article III standing by alleging a bare procedural violation which may result in no harm at all. At the most elementary level, Plaintiff fails to plead that the tires she bought from Pep Boys were in fact, if ever, recalled. The absence of this information is crucial to Plaintiff's lack of Article III standing. For example, not all tires sold by Pep Boys are recalled; similarly, not all recalled tires are sold by Pep Boys. Therefore, we conclude that the particular procedural violation alleged in this case fails to entail a degree-of-risk sufficient to meet the concreteness

requirement, and therefore fails to qualify as an injury-in-fact.  Spokeo, 136 S.Ct. at 1550.

Consequently, we find that Plaintiff does not have Article III standing to bring her claim.  Viewing the allegations and drawing all inferences in the light most favorable to the Plaintiff, Defendant's alleged non-compliance with the Safety Act does not make it plausible that Plaintiff is imminently threatened with a concrete and particularized injury-in-fact that is fairly traceable to the challenged action of defendant nor likely to be redressed by a favorable judicial decision.  Hartig Drug Co. Inc. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016) (citing Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (quotation marks and citations omitted)).  All other requests made by the Plaintiff are disregarded due to a lack of Article III standing.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED without prejudice.  An accompanying Order will follow.